IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANNON KIRLEY,                               )
                                             )
              Plaintiff,                     )
                                             )
       v.                                    )       No. 13 C 1706
                                             )
BOARD OF EDUCATION OF MAINE                  )
TOWNSHIP HIGH SCHOOL DISTRICT 207            )
and MAINE TOWNSHIP HIGH SCHOOL               )
DISTRICT 207,                                )
                                             )
              Defendants.                    )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Jannon Kirley ("Kirley") alleges in her four-count complaint that her former

employers, defendants Maine Township High School District 207 and Board of Education of

Maine Township High School District 207 (together "District 207"), are liable for: (1) gender

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII") (Count I); (2) age discrimination and retaliation in violation of the Age Discrimination in

Employment Act ("ADEA") (Count II); (3) retaliation for Kirley's exercise of her First

Amendment right to free speech in violation of 42 U.S.C. § 1983 ("Section 1983") (Count III);

and (4) retaliation in violation of the Illinois Whistleblower's Act ("IWA") (Count IV).

Before the court is District 207's "Motion to Dismiss Counts II, III, and IV of Plaintiff's

Complaint." (Dkt. No. 11.) For the reasons set forth below, District 207's motion is granted in

part and denied in part. Count II is dismissed to the extent Kirley alleges a claim for age

discrimination; Count II remains pending with respect to Kirley's claim for retaliation under the

ADEA; Count III remains pending; Kirley's request for monetary damages with respect to Count

IV is stricken, but Count IV remains pending in all other respects. Further dates are set forth in the Conclusion section of this opinion.

BACKGROUND

For purposes of the pending motion, the court accepts all well-pleaded factual allegations in the Complaint as true, viewing them in the light most favorable to Kirley. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). The court also may properly consider "documents that are critical to the complaint and referred to in it" when reviewing a motion to dismiss. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The court therefore accepts District 207's Exhibits A, B, C, D, E, F, and G and Kirley's Exhibits 1 and 2 as appropriate for the court's consideration, as referenced below.

District 207 is a public school district located in Park Ridge, Illinois, consisting of three high schools: Maine South High School ("Maine South"), Main West High School ("Main West"), and Maine East High School ("Main East"). (Dkt. No. 1 ("Compl.") ¶ 3.) Kirley was hired by District 207 in 2000, and served as a physical education and health teacher, as well as a swimming and water polo coach, at Maine South for more than a decade. (*Id.* ¶¶ 4, 13, 44.) Kirley became tenured in 2004, and she received positive performance reviews in March 2006, January 2008, and March 2010. (*Id.* ¶¶ 12, 15-20.)

1.     Events Occurring from January 20, 2010 through May 28, 2010

On January 20, 2010, Kirley attended a public District 207 School Board meeting at Maine East, where a large number of people, including parents and other community members, were present to discuss staff and program reductions being proposed by the Superintendent of District 207, Dr. Ken Wallace ("Dr. Wallace"), and his staff. (*Id.* ¶ 21.) While at the January 20,

2010, School Board meeting, Kirley told a School Board member that she had learned negative information about Dr. Wallace. (*Id.* ¶ 22.) At the time of Kirley's comment, Dr. Wallace was standing nearby, and Kirley believed that he could hear what she said to the School Board member. (*Id.* ¶ 23.)

The next day, on January 21, 2010, while Kirley was leaving Maine South after students and staff had been dismissed for the day, she observed a car driven by Dr. Wallace almost hit her. (*Id.* ¶ 24.) Kirley reported this incident to the Park Ridge Police Department, indicating that she believed Dr. Wallace had acted intentionally. (*Id.* ¶ 25.)

On March 10, 2010, the Assistant Superintendent of District 207, Greg Dietz ("Dietz"), wrote a letter to Kirley, asking Kirley to meet with an investigator hired by District 207 to conduct an independent investigation into the January 21, 2010 incident. (*Id.* ¶ 27; *see also* Dkt. No. 16-3, Pl.'s Ex. 1 ("3/10/10 Letter").) On May 28, 2010, District 207's Board of Education wrote a letter to Kirley indicating that the independent investigator found no merit to Kirley's allegations. (Compl. ¶ 28; *see also* Dkt. No. 12-1, Defs.' Ex. A ("5/28/10 Letter of Admonishment").) The 5/28/10 Letter of Admonishment further stated as follows, in relevant part:

> Based on the Board's review of the results of the investigation, you are hereby admonished and directed as follows:
>
> 1. If you believe your safety, or the safety of any of our staff, students or other persons on our premises is compromised in any respect whatsoever, a report must be immediately made to the appropriate person(s) in the District so that timely measures may be taken to protect the safety of everyone on our premises and so that a timely investigation may be conducted. Generally such reports should be made to your supervisor, and/or Department head, and/or the principal, and/or the appropriate Dean, or other person in authority.
>
> 2. You must not use work time to pursue personal agendas. This of course would include using school time for which you are paid by the District to collect or disseminate negative information about other employees of the District.

3.      You must be forthright and accurate in presenting complaints and responding to those investigating matters on behalf of the Board or the District.

(5/28/10 Letter of Admonishment at 1-2; *see also* Compl. ¶ 28.)  Prior to May 28, 2010, Kirley had not received any formal or informal discipline since being hired by District 207 in 2000. (Compl. ¶ 29.)

2.    Events Occurring from May 28, 2010 through May 6, 2011

Approximately ten months later, in March 2011, Kirley informed Maine South Physical Education Department Chair, Donald Lee ("Lee"), Maine South Principal, Shawn Messmer ("Principal Messmer"), and other Main South employees that she believed the process for selecting one of the male students for a position as a "Junior Leader" was not being followed. (*Id.* ¶ 30.)  Specifically, Kirley complained that male physical education teachers were usurping Kirley's role in deciding whether to recommend the male student for the position.  (*Id.*)  Kirley complained that her gender played a part in the process not being followed.  (*Id.*)

On March 9, 2011, a meeting was held at which the student's eligibility for being a Junior Leader was discussed.  (*Id.* ¶ 31.)  At the March 9, 2011 meeting, attended by Lee and several other physical education teachers, one or more of the participants yelled at Kirley, and one of the physical education teachers cursed at Kirley.  (*Id.*)  Although Principal Messmer determined that a teacher had cursed at Kirley during the March 9, 2011 meeting, that teacher was not disciplined.  (*Id.* ¶ 33.)  Similarly, after Kirley reported to Lee on March 17, 2011 that a male physical education teacher cursed at Kirley in a separate incident, the male physical education teacher was not disciplined.  (*Id.* ¶¶ 32-33.)

On March 25, 2011, Kirley sent an email to Lee outlining various concerns about how she and other employees were treated within the department.  (*Id.* ¶ 34; *see also* Dkt. No. 12-2, Defs.' Ex. B ("3/25/11 Email").)  One of the nine "concerns over the years" that Kirley noted in

her 3/25/11 Email was, "This year you asked me how old I was. Last year you asked me when I was going to retire." (3/25/11 Email (enumerated) ¶ 8.) Kirley stated that she found these questions to be "offensive." (*Id.*; *see also* Compl. ¶ 35.)

On April 3, 2011, Kirley sent an email to Lee outlining her concerns about "the events of March 9th, 2011 and the events surrounding the Junior Leader selection process," as well as the way the March 9, 2011 yelling and cursing incident had been handled. (Dkt. No. 12-3, Defs.' Ex. C ("4/3/11 Email") at 1; *see also* Compl. ¶ 34.) Kirley's 4/3/11 Email also included a list of fifteen different "situations you have or should have knowledge of as the Department Chairperson"—described in more detail in Part 1.B.i, *infra*—including: (1) Kirley's allegation that a male who helped coach the Maine South football team brought in a pair of women's thong underwear for another female physical education teacher; and (2) Kirley's allegation that a Main South staff member made inappropriate comments about young female cheerleaders in Kirley's presence, stating that "he liked to go watch this certain team play because their cheerleaders (high school) had nice butts." (4/3/11 Email (enumerated) ¶¶ 10, 11 (2d); *see also* Compl. ¶ 35.)

On April 28, 2011, Principal Messmer sent a letter to Kirley regarding the "serious accusations" that Kirley had made "over the past few years," including the allegations set forth in Kirley's 3/25/11 Email and 4/3/11 Email. (Dkt. No. 12-4, Defs.' Ex. D ("4/28/11 Letter") at 1; *see also* Compl. ¶ 38.) Principal Messmer stated that, after a thorough investigation, he had been unable to substantiate any of the allegations made in Kirley's 3/25/11 Email and 4/3/11 Email, and he concluded that Kirley "[had] not been forthright and accurate in presenting complaints to the District." (4/28/11 Letter at 4.) Principal Messmer informed Kirley that, "as a result of [her] false and reckless complaints," Principal Messmer had concluded that Kirley "violated the directive given to [her] by the Board of Education in the [5/28/10 Letter of Admonishment]."

(*Id.* at 1; *see* 5/28/10 Letter of Admonishment at (enumerated) ¶ 3 ("You must be forthright and accurate in presenting complaints and responding to those investigating matters on behalf of the Board or the District.").) Principal Messmer recommended that disciplinary action be taken against Kirley including, "[a]t minimum," a "Notice to Remedy" from the Board of Education. (*Id.* at 4.) Principal Messmer also stated,

> You are hereby directed not to communicate with any students or staff (other than [Maine Teachers' Association] officials), in any fashion, about events related to your allegations and the subsequent investigation. Your failure to comply with this directive would be considered an act of insubordination and could result in disciplinary action against you.

(*Id.*; *see also* Compl. ¶ 28.)

On May 4, 2011, Assistant Superintendent Dietz issued a letter to Kirley informing Kirley that she was being suspended "without pay for a period of one (1) work day" due to "the issues outlined in [Principal Messmer's 4/28/11 Letter]." (Dkt. No. 12-5, Defs.' Ex. E ("5/4/11 Letter") at 1.)[1] Dietz also informed Kirley he was "recommending that the Board of Education adopt a Notice to Remedy for unprofessional conduct and insubordination for violating the directive given to you on May 28, 2010." (*Id.* at 2.) Dietz's 5/4/11 Letter included seven "directives," including the following:

- Do not use work time to pursue personal agendas or personal business.

- Do not communicate with colleagues, parents or students about this disciplinary action or the incidents underlying the disciplinary action except for the purpose of preparing a response to the disciplinary recommendation. In the event such communication is necessary, it must be handled in a collegial, non-threatening manner, and Mr. Messmer or the District's attorney must be notified of the individuals you intend to communicate with in advance of such communication.

(5/4/11 Letter at 2; *see also* Compl. ¶ 40.)

---

[1] Although Kirley's Complaint alleges that Kirley received a one-week suspension, (Compl. ¶ 39), the court defers to the 5/4/11 Letter on this point. *See Phillips*, 714 F.3d at 1020 ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

On May 6, 2011, District 207's Board of Education issued Kirley an official Notice to Remedy "as a result of your insubordination and unprofessional behavior as described in Mr. Dietz's May 4, 2011 letter to you." (Dkt. No. 12-6, Defs.' Ex. F ("5/6/11 Notice to Remedy"); *see also* Compl. ¶ 40.) The 5/6/11 Notice to Remedy further stated "[a] repetition of this sort of conduct, or your failure to comply with the directives stated in Mr. Dietz's letter, will most likely result in further disciplinary action, including your dismissal as a tenured teacher in this School District." (5/6/11 Notice to Remedy.)

3.  Events Occurring from May 6, 2011 through October 3, 2011

On May 10, 2011, Kirley was transferred from Maine South to Maine West. (Compl. ¶ 44.) On May 20, 2011, District 207 suspended Kirley for actions occurring on or about May 3, 2011, when Kirley allegedly violated Principal Messmer's April 28, 2011 directive not to speak with staff in any fashion about events related to her allegations and the investigation. (*Id.* ¶ 45.)[2]

On May 21, 2011, Kirley asked her union to file a grievance alleging discrimination and retaliation against District 207 and its "supervisory employees," including Dr. Wallace, Dietz, Principal Messmer, Lee, and the Assistant Principal of Maine South. (*Id.* ¶ 46.) On May 23, 2011, Kirley told Principal Messmer that she intended to file a charge of discrimination with the EEOC. (*Id.* ¶ 47.) On June 14, 2011, District 207 removed Kirley as the Maine South girls' head water polo coach. (*Id.* ¶ 48.)

In August 2011, Kirley was asked to meet with the Assistant Principal of Maine South regarding a student's complaint that the student had not received her American Red Cross Water Safety Instructor ("WSI") certification after completing Kirley's Spring 2011 Lifeguarding Class. (*Id.* ¶ 49.) Kirley was thereafter asked to meet with Dietz and Principal Messmer, and

---

[2] Kirley does not include any details regarding the length of the May 20, 2011 suspension in her Complaint. The 10/3/11 Charges and Particulars state that Kirley received a two-day suspension without pay. (10/3/11 Charges and Particulars ¶ 1.G.)

was accused of retaliating against the student for complaining about Kirley's coaching, by purposely withholding the student's WSI certificate. (*Id.* ¶ 50.) Kirley did not know that the student had complained about her coaching, and Kirley sent out the WSI certificates for all eligible students in her lifeguarding class at the same time. (*Id.* ¶ 52.)

On September 19, 2011, another investigative meeting was held where Dietz asked Kirley whether she had conducted research about filing an EEOC charge. (*Id.* ¶ 53.) At that same meeting, Kirley was also asked whether she had sought to file a union grievance alleging discrimination and retaliation, and whether she had made statements indicating that she had hired a lawyer regarding legal actions against District 207. (*Id.*) Prior to the September 19, 2011 meeting, District 207 had looked to see whether Kirley had accessed any web sites from her school computer and had determined that Kirley had accessed the EEOC web site. (*Id.* ¶ 54.) In addition, District 207 had also determined that Kirley had sent an email to her union asking to file a grievance alleging discrimination and retaliation. (*Id.*)

On September 22, 2011, Dietz sent a letter notifying Kirley that she was being suspended without pay for ten work days based on Kirley's failure to approve WSI certificates "for a female student who was a captain on your water polo team because her complaints to your Principal led to your termination as water polo coach at Maine South" and for a male student "communicating with you in tandem with aforementioned female student," as well as "other misconduct in violation of several directives given to you . . . in the Notice to Remedy dated May 6, 2011." (Dkt. No. 12-7, Defs.' Ex. G ("9/22/11 Letter") at 1, 5; *see also* Compl. ¶ 56.) Dietz further notified Kirley, "[i]n light of your flagrant disregard for the directives given to you by the Board of Education in the May 6, 2011 Notice to Remedy, I am also recommending that the Board of Education dismiss you from employment as a tenured teacher." (9/22/11 Letter at 5.)

On September 29, 2011, Kirley, through her counsel, provided District 207 with a letter indicating that she believed that she was being discriminated against because of her age and gender, being retaliated against for opposing discrimination, being retaliated against for disclosing information to a law enforcement agency, and being retaliated against for exercising her right to free speech. (Compl. ¶ 57.)

On October 3, 2011, District 207 adopted "charges and particulars for [Kirley's] dismissal as a tenured teacher in this School District," (Dkt. No. 16-3, Pl.'s Ex. 2 ("10/3/11 Charges and Particulars")), which charged Kirley with being "insubordinate by violating directives given to [her] from Principal Shawn Messmer in his April 28, 2011 correspondence to [Kirley], from Assistant Superintendent Greg Dietz in his May 4, 2011 correspondence to [Kirley], and from the Board of Education in its May 28, 2010 letter of admonishment and May 6, 2011 Notice to Remedy." (10/3/11 Charges and Particulars (enumerated) ¶ 1.) The 10/3//11 Charges and Particulars specifically referenced the "unfounded allegations [Kirley] made against the Superintendent;" the 5/28/10 Letter of Admonishment; Kirley's 3/25/11 Email; Kirley's 4/3/11 Email; and the 5/6/11 Notice to Remedy. (*Id.* (enumerated) ¶ 1.A.-1.E.; Compl. ¶ 59.) The 10/3/11 Charges and Particulars concluded that Kirley had violated these prior orders, admonishments, directives, and notices by: (1) "less than two weeks after the Board adopted the Notice to Remedy," intentionally disregarding a February 22, 2011 directive by Lee to "cease using students from [her] class to serve as paid lifeguards during their instructional class period"; (2) "questioning a staff member [on May 3, 2011] in direct violation of a directive not to communicate with students or staff about an ongoing investigation"; (3) "evidencing poor judgment and unprofessional behavior" on May 5, 2011, with respect to "several incidents in [her] physical education class"; (4) "[d]uring the week of May 31, 2011, . . . question[ing] two

school employees during work time concerning an issue related to an accident report," without first communicating with Principal Messmer or District 207's attorney; (5) telling students "about an issue with the Junior leader program and [Kirley's] complaints against other staff members," stating to the students that Kirley was "being watched by the administration, that [her] computer was bugged, that Mr. Lee received a bonus for improved fitness scores and that Mr. Lee did not like swimmers"; (6) "provid[ing] recertification testing to a non-District 207 student using District facilities," without authorization; (7) retaliating against two students in the WSI course by withholding their WSI certificates; and (8) by not being "forthright, truthful or accurate when questioned by administrators on August 31 and September 19, 2011" about these and other incidents. (10/3/11 Charges and Particulars ¶¶ 1.F.-1.I; 1.K-1.M.) Pursuant to an October 3, 2011 letter, Kirley was suspended without pay pending the conclusion of a hearing and final disposition of the dismissal proceedings. (Compl. ¶ 60.) Kirley's dismissal hearing before Illinois State Board of Education Hearing Officer Julius Menacker was held on ten days from November 11, 2012 through March 7, 2013, and Officer Menacker issued a 26-page opinion on July 5, 2013, recommending that "the dismissal of Jannon Kirley be sustained." (Dkt. No. 22-2, Defs.' Ex. L ("7/5/13 Opinion") at 26.[3]) Kirley alleges that she was ultimately "replaced by a younger male employee." (Compl. ¶ 61.)

Kirley alleges that other District 207 employees who were not forthright and accurate in presenting complaints and responding to those investigating matters on behalf of the Board or the District were not disciplined; that other District 207 employees were not given written instructions restricting their ability to speak with colleagues, parents or students; and that other

---

[3] As set forth in Note 4, *infra*, on review of a motion to dismiss, the court may take judicial notice of facts that are readily ascertainable from the public record and not subject to reasonable dispute.

District 207 employees who used their school computers for personal reasons were not disciplined by District 207. (Compl. ¶¶ 41-42, 55.)

PROCEDURAL HISTORY

On October 3, 2011, Kirley filed charge #846201190905 with the EEOC, claiming discrimination based on age and sex, and retaliation. (Compl. ¶¶ 8, 58; Compl. Ex. A.) On March 16, 2012, Kirley field charge #440201202701 with the EEOC, also claiming discrimination based on age and sex, and retaliation. (Compl. ¶ 9; Compl. Ex. B.) Kirley received her Notices of Right to Sue with respect to both charges on December 11, 2012. (Compl. ¶ 11; Compl. Ex. C.) Kirley filed this lawsuit eighty-five days later, on March 5, 2013.

LEGAL STANDARD

When reviewing a 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the court is to "draw on its judicial experience and common sense." *Id.* at 679. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665

11

F.3d 930, 935 (7th Cir. 2012). Nevertheless, if a complaint "sets out all of the elements of [a statute of limitations] defense, dismissal under Rule 12(b)(6) is appropriate." *Id.*

## ANALYSIS

1.    Count II - ADEA Claim

Incorporating the above background facts, Kirley alleges that District 207 discriminated against her based on her age and retaliated against her "based on Kirley's opposition to age discrimination and participation in the EEOC charge filing process." (Compl. ¶¶ 68-69.) The specific acts of discrimination and retaliation alleged include:

> subjecting [Kirley] to discipline and/or suspending her in or about May, June, and September 2011, and recommending her dismissal in or about October of 2011 and suspending her without pay since in or about October of 2011, transferring her in or about May of 2011, taking away her coaching duties in or about June of 2011, and giving her directives that restricted her right to oppose discrimination, including by restricting her right to freely communicate with others.

(*Id.* ¶ 70.)

A.    Time-Bar

District 207 first argues that Kirley's ADEA claim is time-barred, because Kirley's EEOC charge was not filed within 300 days of any alleged unlawful practice. (Dkt. No. 12 ("Defs.' Mem.") at 18-20; *see also* 29 U.S.C. § 626(d)(1)(B).) According to District 207, Kirley cannot base her claims on Lee's questions about Kirley's age and retirement plans, because these questions were posed to Kirley in February 2009 and the fall of 2010[4]—well before Kirley filed her initial EEOC charge on October 3, 2011. (Defs.' Mem. at 19-20.)

---

[4] The court takes judicial notice of the fact that Kirley testified to these dates on December 17, 2012 at an Illinois State Board of Education hearing regarding her dismissal. (Defs.' Ex. J ("12/17/12 Tr.") at 1680:1-1682:24.) *See Phillips*, 714 F.3d at 1020 (courts may consider "information that is subject to proper judicial notice" when reviewing a motion to dismiss); *see also Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) ("A court may take judicial notice of facts that are . . . readily ascertainable from the public court record and not subject to reasonable dispute."). The court agrees with Kirley that "the credibility of any testimony

The problem with District 207's argument is that the "alleged unlawful practice" in this case is not Lee's comments, but instead is comprised of District 207's actions in May 2011, June 2011, September 2011, and October 2011. (*See* Dkt. No. 16-1 ("Kirley's Resp.") at 19 ("Kirley is not claiming that the age comments in and of themselves constituted an adverse action for purposes of her Complaint.").) Because the alleged unlawful acts of discrimination and retaliation all took place within 300 days of Kirley's October 3, 2011 EEOC charge, the court rejects District 207's argument that Kirley's ADEA claim is untimely.

B.      Failure to State a Claim

District 207 next argues that Kirley has failed to allege a plausible claim of age discrimination or retaliation under the ADEA. The court reviews each argument in turn.

i.      ADEA Discrimination Claim

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a discrimination claim under the ADEA, a plaintiff must ultimately "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). "However, much less is required of a plaintiff at the pleading stage." *Basil v. CC Servs., Inc.*, No. 12 C 1341, 2012 WL 3686797, at *4 (N.D. Ill. Aug. 23, 2012) (Darrah, J.). As the Seventh Circuit has stated in the context of a Title VII sex discrimination claim, "a complaint alleging [illegal] discrimination need only aver

_____

presented at the dismissal hearing should not be determined at the motion to dismiss." (Dkt. No. 16-1 ("Kirley's Resp.") at 11.) Nevertheless, this question of fact appears to be undisputed, and the court construes Kirley's response brief as adopting the dates set forth in her prior testimony. Because these dates are not inconsistent with the allegations in the Complaint, and because "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove," the court accepts these dates as an accurate recitation of Kirley's version of the events. *Geinosky*, 675 F.3d at 745 n.1.

that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected status]." *Tamayo*, 526 F.3d at 1084; *see also Lavalais*, 734 F.3d at 633 (applying *Tamayo* standard to Title VII race discrimination claim). In this manner, "simple claims of race or sex discrimination" need only satisfy a "minimal pleading standard." *Tamayo*, 526 F.3d at 1084 (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007)). Tweaking the *Tamayo* standard to take into account material differences between Title VII and the ADEA—*see Gross*, 557 U.S. at 173 ("Title VII is materially different [from the ADEA] with respect to the relevant burden of persuasion")—yields the following: a complaint alleging age discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff because of her age.

Kirley has alleged that she is 55 years old (Compl. ¶ 2); that Lee asked her in February 2009 when she was going to retire (Compl. ¶ 35; 3/25/11 Email (enumerated) ¶ 8; 12/17/12 Tr. at 1681:6-1682:24); that Lee asked her in the fall of 2010 how old she was (Compl. ¶ 35; 3/25/11 Email (enumerated) ¶ 8; 12/17/12 Tr. at 1680:1-1681:5.); that she received "excellent" performance reviews through March 12, 2010 (Compl. ¶¶ 16-20); that she was subjected to various acts of discrimination in May 2011, June 2011, September 2011, and October 2011 (Compl. ¶ 70); that these acts of discrimination were based on her age (Compl. ¶ 68); and that she was ultimately replaced by a younger employee (Compl. ¶ 61). Kirley does not allege that any similarly-situated younger employees were treated more favorably by District 207.

Although Kirley's burden at the pleading stage is limited to allegations that District 207 instituted specific adverse employment actions against her because of her age, as discussed above, her allegations in this regard must also be plausible—they must "allow[ ] the court to draw the reasonable inference that [District 207] is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678; *accord Tamayo*, 526 F.3d at 1084 (quoting *Concentra* for the proposition that a complaint's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'").  In this case, based on the specific allegations set forth in the Complaint, as well as the documents appropriately attached to District 207's motion to dismiss, and viewing these allegations in the light most favorable to Kirley, the court finds that Kirley has failed to state a plausible claim for age discrimination.

District 207 argues that Lee's "two isolated comments separated by nearly one year are simply 'too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against' on the basis of age."  (Defs.' Mem. at 21 (quoting *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997)).)  The court agrees.  As the Seventh Circuit has consistently held, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus."  *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 721 (7th Cir. 2008) (quoting *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006), *cert. denied*, 551 U.S. 1130 (2007)).  Although "[a] remark can raise an inference of discrimination when it was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action," *Petts*, 534 F.3d at 721 (internal quotation marks and citation omitted), none of these factors apply to Lee's two isolated comments in 2009 and 2010.  Kirley has not alleged that any decision maker made any comments about her age or her retirement plans around the time of the alleged adverse employment actions, beginning in May 2011, or in reference to these alleged adverse employment actions, nor has she alleged any other factual allegations supporting her conclusory allegation that "District 207 discriminated against [her] based on [her] age." (Compl. ¶ 68.)  More importantly, the Complaint's allegations regarding the 3/25/11 Email, the

4/3/11 Email, the 4/28/11 Letter, the 5/4/11 Letter, the 5/6/11 Notice to Remedy, the 9/22/11 Letter, and the 10/3/11 Charges and Particulars, and the documents themselves, simply do not permit the court to draw the *reasonable* inference that age was the but-for cause of District 207's disciplinary actions. Kirley's emails together included more than fifteen specific accusations of wrongdoing against her supervisor and at least five of her colleagues, including allegations of theft, unethical hiring practices, safety issues, employees smoking marijuana on school grounds, and the falsification of documents such as accident reports, workload assignments, and American Red Cross certification requirements. Among these accusations is a lone paragraph addressed to Lee, stating: "This year you asked me how old I was. Last year you asked me when I was going to retire. I find this offensive." (3/25/11 Email (enumerated) ¶ 8.) The 4/28/11 Letter, the 5/4/11 Letter, the 5/6/11 Notice to Remedy, the 9/22/11 Letter, and the 10/3/11 Charges and Particulars make no mention of Kirley's age, Lee's comments, or Kirley's complaint to Lee about his comments. Rather, each of these documents explicitly refers to Kirley's allegedly insubordinate behavior and failure to substantiate her numerous complaints and accusations as the reason for District 207's disciplinary actions. Against this backdrop, Kirley's failure to include supporting factual allegations, even in light of *Tamayo*'s minimal pleading standard, results in a Complaint that fails to "nudge[ ] [Kirley's] claim[ ] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Viewing the Complaint's allegations, and related documents, in the light most favorable to Kirley, the court concludes that Kirley has failed to state a plausible claim for age discrimination under the applicable pleading standard. District 207's motion to dismiss Kirley's ADEA discrimination claim is therefore granted and Count II is dismissed, in part, to the extent it alleges a claim of age discrimination.

ii.   ADEA Retaliation Claim

Count II of Kirley's Complaint also includes a claim for retaliation under the ADEA. The ADEA makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has opposed any practice made unlawful" under the ADEA.  29 U.S.C. § 623(d).  To prevail on a retaliation claim under the ADEA, a plaintiff must ultimately prove by a preponderance of the evidence that he or she "engaged in statutorily protected activity, that he [or she] suffered a materially adverse action, and that the two are causally related."  *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011).  Like a discrimination claim under the ADEA, "ADEA retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor."  *Id.*

In its initial brief, District 207 failed to address Kirley's ADEA retaliation claim. Generally, arguments raised for the first time in a reply brief are considered waived.  *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013) ("[I]t is well established that arguments raised for the first time in a reply brief are waived.").  Because Kirley addressed the sufficiency of her ADEA retaliation claim in her response, however, the court will briefly touch on the retaliation claim in its analysis.

Kirley first contends that she engaged in statutorily protected activity on March 25, 2011, when she "complained about the age comments to which she was subjected."  (Pl.'s Resp. at 20.) The court agrees with District 207 that Kirley's statements to Lee—"This year you asked me how old I was.  Last year you asked me when I was going to retire.  I find this offensive." (3/25/11 Email (enumerated) ¶ 8)—do not serve as a statutorily protected activity "oppos[ing] any practice made unlawful" under the ADEA, as required by the ADEA's retaliation provision. 29 U.S.C. § 623(d).  Simply put, it is not unlawful for a supervisor to ask a subordinate his or her

age, or for a supervisor to ask a subordinate when he or she plans to retire. Accordingly, Kirley's 3/25/11 Email complaining about Lee's questions cannot constitute statutorily protected activity under the ADEA.

In addition to the 3/25/11 Email to Lee, however, Kirley asked her union representative on May 21, 2011, to file a grievance on her behalf alleging discrimination and retaliation. (Compl. ¶ 46.) Later developments show that District 207 was aware of this email. (*Id.* ¶ 54.) Additionally, on May 23, 2011, Kirley told Principal Messmer that she intended to file a charge of discrimination with the EEOC. (*Id.* ¶ 47.) Approximately three weeks later, on June 14, 2011, Kirley was removed as the Maine South girls' head water polo coach. (*Id.* ¶ 48.) In August and September 2011, Kirley was questioned about two topics: her failure to issue WSI certificates to two students in her spring class and her at-work research activities into filing discrimination claims and grievances. (*Id.* ¶¶ 49-50, 53.) On September 22, 2011, three days after the last "investigative meeting" was held on these topics, Kirley was notified that Dietz would be recommending her dismissal. (Compl. ¶¶ 56.) Whether Kirley had a "sincere and reasonable belief" that she was opposing an unlawful practice when she filed her grievance and prepared to file her charge of discrimination with the EEOC, *Magyar v. St. Joseph Regional Med. Cntr.*, 544 F.3d 766, 771 (7th Cir. 2008) (citation omitted), is a question best addressed at the close of discovery, when the factual record has been more fully developed.

Viewing the Complaint's allegations in the light most favorable to Kirley, the court finds that Kirley has alleged a plausible claim for ADEA retaliation at this point in the litigation. District 207's motion to dismiss Kirley's ADEA retaliation claim is accordingly denied.

2.      <u>Count III - § 1983 Claim (First Amendment)</u>

Section 1983 makes it unlawful for a person acting under color of state law to "subject[ ], or cause[ ] to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

Although not explicitly set forth in Count III, Kirley clarifies in her response brief her contention that she engaged in constitutionally protected speech when "she reported that she believed that the Superintendent of District 207 had almost intentionally hit her with his car on January 21, 2010."  (Pl.'s Resp. at 22 (citing Compl. ¶¶ 24-26).)  Kirley alleges that District 207 thereafter retaliated against her for exercising her First Amendment right to free speech, by:

> subjecting [Kirley] to discipline and/or suspending her in or about May, June, and September 2011, recommending her dismissal in or about October of 2011 and suspending her without pay since October of 2011, transferring her in or about May of 2011, [and] taking away her coaching duties in or about June of 2011 . . . .

(Compl. ¶ 72.)  Kirley further alleges that District 207 retaliated against her by "giving her directives that restricted her right to free speech, including, but not limited to, the letter of admonishment dated May 28, 2010."  (*Id.*)

"A viable First Amendment retaliation claim by a public employee requires, at a minimum, that the speech being retaliated against be constitutionally protected, which means that the speech must involve a matter of 'public concern.'"  *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013) (citing *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)).  For purposes of its motion to dismiss, District 207 accepts that Kirley's police report was constitutionally protected speech.  (*See* Dkt. No. 22 ("Defs.' Reply") at 13.)  Moreover, although Supreme Court precedent "requires a threshold determination regarding whether the public

employee spoke in his capacity as a private citizen or as an employee," *Chaklos*, 560 F.3d at 711-12 (citing *Garcetti*, 547 U.S. at 417), the court finds that Kirley has plausibly alleged and argued that she "reported the incident to the Park Ridge Police Department as a private citizen and not pursuant to her duties as a teacher." (Compl. ¶ 26; *see also* Pl.'s Resp. at 22.[5])

District 207 argues that Kirley's First Amendment claim for retaliation nevertheless must be dismissed, because she has "failed to allege any facts establishing a causal relationship between [her report to the police] and any disciplinary action." (Defs.' Reply at 13.) In support of this argument, District 207 cites the "nearly 15-month gap between the 2010 police report and [Kirley's] later discipline," as well as Kirley's "myriad of unprofessional, insubordinate, intervening conduct." (*Id.*)

Kirley argues that she has adequately pleaded causation, contending that the 5/28/10 Letter of Admonishment "was clearly given to Kirley because she reported an alleged crime to the police," and there is a "direct causal link" between the 5/28/10 Letter of Admonishment, the 5/6/11 Notice to Remedy, and the 10/3/11 Charges and Particulars recommending Kirley's dismissal. (Pl.'s Resp. at 23-24 (quoting 4/28/11 Letter ("Although a police report was filed, the Park Ridge Police closed the case after 40 hours and neither charges nor arrests were made in the case. *As a result*, on May 28, 2010, the Board sent you a letter of admonishment . . . .")) (emphasis added).) Kirley further notes that, prior to her 2010 report to the police, she received excellent performance reviews and had never been disciplined by District 207. (Pl.'s Resp. at 24; *see also* Compl. ¶¶ 16-20, 29.)

---

[5] Kirley's statement on page 23 of her response, that "Kirley's reporting of an alleged crime to the police was protected speech under the First Amendment because it was made within her duties as a teacher . . . .," appears to be a typo rather than an admission of fact contrary to the Complaint's allegations. (Pl.'s Resp. at 23; *compare* Pl.'s Resp. at 22 *and* Compl. ¶ 26.)

Ultimately, Kirley must prove that her constitutionally protected speech "was a substantial or motivating factor in the alleged retaliatory action." *Volkman v. Ryker*, __ F.3d __, No. 12-1778, 2013 WL 6228316, at *3 (7th Cir. Dec. 2, 2013). Generally, causation is a "factual matter . . . best answered by the traditional finder of fact." *Id.* It is clear from the allegations of the Complaint, as well as the documents appropriately attached to District 207's motion to dismiss, that there was a domino effect with respect to Kirley's discipline, stemming back to the 5/28/10 Letter of Admonishment. (*See* 5/4/11 Letter ¶ 2 ("Based on the evidence collected during the investigation, I believe you . . . violated a directive given to you on behalf of the Board of Education on May 28, 2010."); *see also* 5/6/11 Notice to Remedy ("This Notice to Remedy is issued to you . . . as a result of your insubordination and unprofessional behavior as described in Mr. Dietz'[s] May 4, 2011 letter to you.").) The 5/28/10 Letter of Admonishment, in turn, specifically noted "[t]he Park Ridge police have . . . concluded that the facts did not support your claim." (5/28/10 Letter of Admonishment ¶ 1.) The court finds that, at this preliminary stage, Kirley has plausibly alleged that her 2010 report to the police was "at least a motivating factor—or, in philosophical terms, a 'sufficient condition'—of [District 207's] decision to take retaliatory action against [her]" in 2011. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (quoting *Greene v. Doruff*, 660 F.3d 975, 979-80 (7th Cir. 2011)). At the summary judgment stage, of course, District 207 will have an opportunity to rebut Kirley's evidence "by demonstrating that 'the harm would have occurred anyway,' even without the protected conduct—or, in other words, 'that [Kirley's] conduct was not a *necessary* condition of the harm.'" *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013) (quoting *Greene*, 660 F.3d at 980) (emphasis supplied in *Peele*).

Finally, a successful First Amendment retaliation claim also requires the plaintiff to have "suffered a deprivation likely to deter free speech." *Kidwell*, 679 F.3d at 964. Where an employee has been terminated, this element is presumed satisfied. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) ("because both plaintiffs were terminated, it is undisputed that each suffered a deprivation likely to deter the exercise of free expression"); *see also Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 671 (7th Cir. 2009) ("There is no dispute that Defendants, in firing Valentino, caused her to suffer an adverse action likely to chill her freedom of speech."). As noted above, Kirley has alleged that District 207 engaged in retaliatory actions by "subjecting her to discipline and/or suspending her in or about May, June, and September 2011, recommending her dismissal in or about October of 2011 and suspending her without pay since October of 2011, transferring her in or about May of 2011, taking away her coaching duties in or about June of 2011, and giving her directives that restricted her right to free speech, including, but not limited to, the letter of admonishment dated May 28, 2010." (Compl. ¶ 72.) These alleged "deprivations" are sufficiently deterrent to withstand a motion to dismiss. Because Kirley does not appear to be claiming a separate cause of action based on District 207's prior restraint on Kirley's right to free speech, District 207's arguments regarding reasonable time, place, and manner restrictions, (Defs.' Mem. at 31-33), are irrelevant.

Based on the above analysis, the court concludes that Kirley has alleged a plausible claim for First Amendment retaliation. District 207's motion to dismiss Count III is therefore denied.

3. <u>Count IV - IWA Clam</u>

The Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.* ("IWA"), provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the

information discloses a violation of a State or federal law, rule, or regulation."  740 ILCS 174/15(b).

Although not explicitly set forth in Count IV, Kirley clarifies in her response brief that her "IWA claims involve the same protected activity as her First Amendment claim—reporting what she reasonably believed to be a crime under the Illinois Criminal Code (aggravated assault) to law enforcement, [when] she reported that she believed that the Superintendent of District 207 had almost intentionally hit her with his car on January 21, 2010."  (Pl.'s Resp. at 28 (citing Compl. ¶¶ 24-25).)  Kirley alleges that District 207 thereafter retaliated against her for reporting to law enforcement, by:

> disciplining and/or suspending [Kirley] in or about May of 2010, May, June and September of 2011, recommending her dismissal in or about October of 2011, and suspending her without pay since in or about October of 2011, transferring her in or about May of 2011, taking away her coaching duties in or about June of 2011, and giving her directives that restricted her right to engage in protected activity under the IWA, including but not limited to the letter of admonishment dated May 28, 2010.

(Compl. ¶ 76.)

A.    Time-Bar

District 207 first argues that Kirley's IWA claim is time-barred by the one-year statute of limitations contained in Section 8-101 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act").  *See* 745 ILCS 10/8-101(a).  "[I]t has been squarely held in Illinois that as a retaliatory discharge claim is a tort, the one-year statute of limitations period provided in the Tort Immunity Act thus applies thereto."  *Padilla v. County of Cook*, 100 F. Supp. 2d 1145, 1147 (N.D. Ill. 2000) (Levin, M.J.) (analyzing former Illinois Whistleblowers Protection Act, 5 ILCS 395/1, *et seq.*) (citing *Halleck v. County of Cook*, 637 N.E.2d 1110 (Ill. App. Ct. 1st Dist. 1994)).  Kirley argues that her IWA claim arises out of a

contractual relationship, and is therefore not subject to the Tort Immunity Act. (Pl.'s Resp. at 26 (citing *Henon v. Lever Bros. Co.*, 449 N.E.2d 196, 197 (Ill. App. Ct. 1st Dist. 1983)); *see also* 745 ILCS 10/2-101(a) (excluding from coverage liability "based on [c]ontract").) The court is not persuaded, and finds Kirley's IWA claim to be more analogous to a retaliatory discharge claim. *See Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 624 n.4 (Ill. App. Ct. 1st Dist. 2005) ("The 'whistleblower' cause of action has since been codified in the Whistleblower Act (740 ILCS 174/15 (West 2004)).") Respectfully, this court also disagrees with the dictum in *Zelman v. Hinsdale Township High Sch. Dist. 86*, stating that "the one-year statute of limitations contained in the Tort Immunity Act does not apply to the instant case of retaliatory discharge under the IWA." *Zelman v. Hinsdale Township High Sch. Dist. 86*, No. 10 0154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (Coleman, J.). Simply put, the fact that Section 2-109 of the Tort Immunity Act does not apply to retaliation claims does not affect whether the Tort Immunity Act's statute of limitations is applicable to a retaliation claim.[6]

Because all of District 207's alleged retaliatory actions occurred prior to March 5, 2012, the one-year statute of limitations set forth in the Tort Immunity Act precludes Kirley from bringing a claim for monetary damages under the IWA in her March 5, 2013 Complaint. On the other hand, the Tort Immunity Act explicitly states "[n]othing in this Act affects the right to

---

[6] Section 2-109 sets forth a local public entity's blanket immunity from liability for its employee's own torts, in cases where the employee is not liable. 745 ILCS 10/2-109. In *Smith v. Waukegan Park Dist.*, the Supreme Court of Illinois held that the local entity defendant was "not immune from liability under section 2-109" for a claim of retaliatory discharge—in other words, that Section 2-109 did not apply to grant immunity to the defendant. *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236 (Ill. 2008). The *Smith* court did not, however, hold that the Tort Immunity Act as a whole was inapplicable. On the contrary, in *Boyles v. Greater Peoria Mass Transit Dist.*, the Supreme Court of Illinois explicitly held that a retaliation claim for filing for worker's compensation "is not an action exempt from the protection of the Tort Immunity Act." *Boyles v. Greater Peoria Mass Transit Dist.*, 499 N.E.2d 435, 438 (Ill. 1986) (citing Ill. Rev. Stat. 1983, ch. 85, par. 2-102, now codified at 745 ILCS 10/2-102). The *Zelman* court's reliance on *Smith* and *Boyles* to support the above-quoted dictum is therefore not persuasive on this point.

obtain relief *other than damages* against a local public entity." 745 ILCS 10/2-101 (emphasis added); *see Pace v. Regional Transp. Authority*, 803 N.E.2d 13, 29 (Ill. App. Ct. 2d Dist. 2003) ("It is well settled that the Tort Immunity Act applies only to tort actions seeking damages and not to actions seeking injunctive relief."). Kirley therefore may proceed with her IWA claim insofar as she seeks reinstatement and injunctive relief. (Compl. at 14-15 (Prayer for Relief) ¶¶ A, H.)

### B.    Failure to State a Claim

District 207 next argues that Kirley fails to state a claim under the IWA, because she "was not disciplined for making a 'report' to a law enforcement agency but rater received a letter of admonishment based on the District's investigator's findings and what she said to the investigator when 'responding to' his inquiries." (Defs.' Reply at 9.) This argument is belied by Principal Messmer's statement in the 4/28/11 Letter that the Board sent Kirley the 5/28/10 Letter of Admonishment "[a]s a result" of the Park Ridge Police department's closed case. (4/28/11 Letter at 1.) For the reasons set forth in Part 2, *supra*, the court has concluded that Kirley has plausibly alleged retaliation against her for filing the police report. No more is needed at this stage of the litigation.

### CONCLUSION

For the reasons set forth above, District 207's "Motion to Dismiss Counts II, III, and IV of Plaintiff's Complaint" (Dkt. No. 11) is granted in part and denied in part. Count II is dismissed to the extent Kirley alleges a claim for age discrimination; Count II remains pending with respect to Kirley's claim for retaliation under the ADEA; Count III remains pending; Kirley's request for monetary damages with respect to Count IV is stricken, but Count IV remains pending in all other respects. Count I also remains pending, and Defendants' Answer to

Count I has been filed with the court.  (Dkt. No. 14.)  Defendants' Answer to Counts II, III, and IV is due on or before 1/10/14.  Counsel are requested to meet pursuant to Rule 26(f) and jointly file a Form 52 on or before 1/17/14.  This case is set for a report on status and entry of a scheduling order on 1/21/14, at 9:00 a.m.  The parties are encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
District Judge, United States District Court

Date:  December 20, 2013